FALL, 1810.
First District.

TERRITORY
vs.
NUGENT.

JUDGMENT FOR PLAINTIFFS.

---

### TERRITORY vs. NUGENT, *Ante p.* 117.

*By the Court*, MARTIN, *J. alone.* The defend-ant's counsel has moved in arrest of judgment, on account of the insufficiency of the indictment; it not appearing, with the requisite certainty, that the offence has been committed within the juris-diction of this court.

The offence must be express-ly stated to have been committed within the juris-diction of the court.

THE words, *Territory of Orleans : First District,* are in the margin, and the offence is stated to have been committed *in the city of New-Orleans.* It is contended that the indictment ought to have gone further, in the description of the place; that the words, *in the district aforesaid,* ought at least to have been added, in order to connect the city with the district, in the margin.

IN support of this position, the counsel has first introduced the case of *the king* vs. *Fosset,* cited in 3 *P. Wms.* 497, in which the court said that "if the county is in the margin, and the " place, in which the act is supposed to have " been done, is not said to be in *comitatu prædict-* " *to,* it is ill."

Y

The authority of Hales, in the *Pleas of the Crown, vol.* 2, 180, is next invoked. " *Suffolk* " in the margin, the indictment supposing a fact " done, *apud S. in comitatu prædicto*, is good, " for it refers to the county in the margin." From which it is implied, that without such a reference, it would have been bad.

The attention of the court is next drawn to 3 *Bacon,* 99, *Verbo* Indictment, where it is said to have been " *generally* holden that the want of an " express allegation of the precinct, where the " offence happened, is not supplied by putting it " in the margin of the indictment, unless it goes " further, as by adding *in comitatu prædicto.*"

But the Attorney-General has replied, that the dictrict is in the margin of the indictment, which is sufficient : and he relies, first, on 4 *Comyns* 393, where it is said that, the place is sufficient, without the county, if the county be in the margin. Secondly, on *Hawkins P. C.* 220. " In some cases it has been holden—that " if the county be expressed in the margin, the " place in which the offence is laid, shall be in- " tended to be in the same county."

On examining the last authority, I find that the author adds " but the greater number of authorities require a greater certainty."

He cites, as to the first part of his proposition, 1 *Bullstrod,* 203, *Kelway,* 33. 1 *Siderfin,* 312, *and Croke James,* 167. The two first reports are not within my reach. The case in *Siderfin* is that of *Rex* vs. *Skerrett & others,* and

supports the proposition.  That in *Croke* is
*Leach's* case, which rather supports the converse.

IN order to show that a greater certainty is re-
quired, he cites 1 *Siderfin* 345, *Croke Eliza*, 606,
677, 738, 751, *Croke James*, 96, 276, 2 *Keble* 302,
3 *P. Wms.* 439.

THE case in *Siderfin* is in point, but is only an
*obiter dictum.*

THE first in *Croke Eliza* is *Child's* case, in
which the objection prevailed.  The next is
*Lewson* vs. *Reddlestone,* a civil case, in which
the court rejected it.  The following is *Ludlow's*
case, wherein two objections were made : the
first, that now under consideration; the other,
that it did not appear before what justices the
indictment was taken: the indictment was held
insufficient.  The last is *Hammond* vs. *the Queen,*
in which the objection prevailed.

THE first case in *Croke James* is *Quarles* vs.
*Searle*—it goes but little way to support the posi-
tion, being a civil action.  In the other, *Thomas's*
case, it does not appear the county was in the
margin.

THE case in *Keble* is *the King* vs. *Yarrington,*
on an indictment for a riot, and fully supports the
objection.

THE case in *Peere Williams* is the one relied
upon by the defendant's counsel.

So that it must be concluded from the exami-
nation of the authorities cited by *Hawkins* to es-
tablish the principles contended for by the de-
fendant, that his conclusion is correct.

FALL, 1810.
First District.

TERRITORY
*vs.*
NUGENT.

BUT the Attorney-General has urged that the repetition of the district in the margin, is an *unnecessary prolixity*, and the legislature of this territory has provided that the forms of indictments, *divested of unnecessary prolixity*, should be according to the common law of England.   1805, *chap.* 20, *sec.* 33.

THE forms of indictments are to be according to the common law of England.

*Blackstone* lays it down as a general rule, that the decisions of courts of justice are the evidence of what is common law.   1 *Comm.* 71. According to this writer, the judge's knowledge of that law, is derived from experience and study, from their being long personally accustomed to the judicial decisions of their predecessors; and these are the principal and most authoritative evidence that can be given of the existence of that, which forms the common law.   It is an established rule to abide by former precedents, where the same points come again in litigation, as well to keep the scale of justice even and steady and not liable to waver with every new judge's opinion, as also because the law in that case being solemnly declared and determined, what before was uncertain, and perhaps indifferent, is now become a permanent rule, which it is not in the breast of any subsequent judge to alter or vary from, according to his private judgment, but according to the known law of the land; not delegated to pronounce a new law, but to maintain and expound the old one.   *Ib.* 69.

In the present case, I find, that according to the greatest number of decisions, and opinion of the most authoritative writers, the indictment has not that sufficient certainty, in the description of the place, in which the offence was committed, which the common law requires. In similar cases, the judges in England, and in the United States, have not deemed themselves warranted to pass judgment. I must follow their example, unless there be some clause in our statute book, which authorises a deviation from the marked path.

THE Attorney-General presents one. He says the legislature has authorised the judges not to require *unnecessary prolixity*.

How shall I ascertain what is *unnecessary prolixity ?* If I open the records of the cases which have hitherto been decided, I find that what the prosecutor for the territory calls an *unnecessary prolixity*, has been held, by wise judges, *an essential averment*, the absence of which vitiates the indictment.

BUT it is replied, that the legislature were conscious that, under the strict principles of the common law, there are frequent instances of culprits escaping the punishment due their crimes, through the over nicety of the judge, in allowing objections to the sufficiency of the indictment. This may be. But in thus requiring courts of criminal jurisdiction to swerve from the common law, some clue, some standard, ought to have

FALL, 1810.
First District.

TERRITORY
*vs.*
NUGENT.

been given them, besides human reason, that is as various as the physical and mental capacities of men.    If this is to be the rule, the judge must not declare, but make the law, as he proceeds.

THE offence, charged in the indictment, being the publication of a libel against one of the judges of this court, it will not be readily imagined, that any of the others could be without a due sense of the necessity of punishing it ; whatever may be the ideas out of doors, at the present juncture.

HOWEVER anxious any gentleman, honored with a seat on this bench, may be of the testimony of his own conscience, he will deem it his duty not to remain satisfied therewith.    Jealous of his honor, as well as of the integrity of his mind, he will remember that his reputation is no longer his property, that his country views it as a chattel of which she considers herself as the owner—that it would be to betray her interest, to disregard the opinion of the public, an inflexible censor, who fails not to impute to the body the faults of any of its members—that a suspected judge, casts often on those among whom he sits, the fatal contagion of a tainted reputation.

UNDER these impressions, although I regret to suffer this opportunity of making a necessary example to pass by, I should regret still more a decision which would disable the people of this territory from saying, with our fellow-citizens of the

United States, and a celebrated British jurist, " The freedom of our constitution will not per- " mit that, in criminal cases, a power should be " lodged in any judge, to construe the law, other- " wise than according to the letter."